Filed 3/19/21  In re K.N. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re K.N. et al., Persons Coming Under the Juvenile Court Law. | |
| DEL NORTE DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>Dawn N.,<br><br>    Defendant and Appellant. | A160712<br><br>(Del Norte County Super. Ct. Nos. JVSQ18-6095, JVSQ18-6096, JVSQ18-6097, JVSQ18-6099) |

Dawn N. appeals from orders denying her Welfare and Institutions Code section 388 petitions,[1] and from orders terminating her parental rights as to three of her children and her grandchild.  Regarding her grandson, K.N., Dawn N. also contends there was a failure to conduct an adequate inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq., ICWA).  In the case of K.N., we conditionally reverse the order terminating

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

parental rights and remand for the limited purpose of ensuring ICWA compliance. We otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, Dawn N. gave birth to Logan D., who was born exhibiting signs of withdrawal. One month earlier, while receiving prenatal care, Dawn N. tested positive for methamphetamine.

After an investigation, in July 2018, the Del Norte County Department of Health and Human Services (Department) filed six section 300 petitions on behalf of five children and one grandchild of Dawn N. and J.D.[2] The petitions allege the parents of Logan D., Phillip D., and Jeffrey D. failed to protect them because the parents suffer from substance abuse problems.[3] (§ 300, subd. (b).) In K.N.'s case, the petition alleges Melissa N.—who is Dawn N.'s daughter and K.N.'s mother—left the child in the care of the grandparents, who suffer from substance abuse problems. (§ 300, subds. (b), (g).)

I.  *Detention*

The detention reports, filed in July 2018, explain that Dawn N. "only took 17 minutes" to deliver Logan D., which suggested "she used meth-amphetamine during pregnancy." After his birth, Logan D. was flown to another facility due to respiratory problems, and he exhibited signs of withdrawal including high-pitched, inconsolable cries.

Dawn N. and J.D. lived in a motor home with their children and grandchild. A social worker observed the motor home "to be filthy inside with a sink full of dishes, dirt and sand spread [throughout] the home, dirty sheets and blankets, as well as piles of garbage around the outside of the home."

---

[2] This appeal concerns four of the six dependency cases.

[3] The father and one of the children have the same name. We refer to the father as J.D., and the child as Jeffrey D.

The social worker detected "a profound odor of a dirty chemical smell" and a slight smell of marijuana.

Dawn N. told the social worker she had only two prenatal visits during her pregnancy with Logan D. because the father was incarcerated. Dawn N. was "buying suboxone off the streets during her pregnancy." The father, J.D., stated he "last used" recently. The Department recommended the children be detained as a result of their vulnerability to drug exposure.

In the detention reports for Logan D., Phillip D., and Jeffrey D., the Department stated the ICWA did not apply because Dawn N. and J.D. stated they had no Native American ancestry. Regarding K.N., the Department was unable to make a similar determination because it could not locate or speak with Melissa N. K.N., who was three years old, had been in the care of his grandparents "since he was two months old" due to Melissa N.'s "own substance abuse."

At the contested detention hearing in July 2018, the court provided Dawn N. and J.D. with ICWA-020 forms, and they stated they did not have Native American ancestry. Dawn N. filled out the forms in the dependency cases of Logan D., Phillip D. and Jeffrey D. It is not clear whether the father completed them.

K.N.'s mother, Melissa N., was not present at the detention hearing, and the Department claimed she was homeless. However, when asked about K.N., Dawn N. stated, "His grandfather is Yurok." She testified his father was Brian H., but she did not know how to contact him, stating "[h]e used to live in town."[4] At some point, Melissa N. completed an ICWA-020 form

---

[4] Brian H. is sometimes identified as Brandon H., and his last name is also spelled in different ways in the record.

3

indicating she may have Indian ancestry, and she identified her tribe as "Oneida."[5]

At the detention hearing, the social worker testified that Logan D. was still in the hospital, he was suffering from withdrawal symptoms and being treated with morphine. Hospital staff told the social worker Dawn N. had difficulty staying awake while holding the baby and she almost dropped him. The family received services in the past, but the Department's efforts had not mitigated the risks to the children.

The father, J.D., testified he was incarcerated for 90 days during Dawn N.'s pregnancy for driving without a license. Although he acknowledged using methamphetamine in the past, he claimed to have "an anger problem," not a substance abuse problem. The father acknowledged using meth-amphetamine once since his release from jail in March 2018. Regarding marijuana use in the home, the father agreed it was a problem but stated he was quitting. He testified the chemical smell in the motor home was from a propane tank that was low on gas. Regarding K.N., J.D. confirmed the grandchild had been part of the household for his entire life.

After hearing this testimony and argument from the parties, the court detained the children and the grandchild. The court granted Dawn N. and J.D. additional visitation with K.N. because they were raising him and appeared to be his de facto parents.

II. *Jurisdiction*

The jurisdiction reports, filed later in July 2018, stated Dawn N. and J.D. were "proactive since the detention hearing . . . in taking steps to obtain

---

[5] Although the form is dated July 5, 2018, Melissa N.'s attorney did not file it until eight months later, on March 8, 2019. It is not clear whether the Department was ever made aware of it.

4

sobriety," but they both tested positive for methamphetamine in early July 2018. The father, J.D., had an extensive criminal history, including a conviction for sexual battery (Pen. Code, § 243.4), and he was required to register as a sex offender.

The reports noted the parents had "productive and meaningful visits with their children." Nevertheless, the Department could not recommend returning the children to their care because the parents "have not been able to demonstrate an ability to remain sober."

The reports for Logan D., Phillip D., and Jeffrey D. indicated the ICWA did not apply based on statements of their parents. In K.N.'s case, the Department was unable to determine if the ICWA applied due to limited contact with Melissa N. and no contact with the alleged father. A social worker spoke with Melissa N. in mid-July 2018, who was "homeless[,] going from couch to couch." Melissa N. stated Brian H. "may be the biological father . . . but [she] is unsure as he has not performed a paternity test."

At the jurisdiction hearings in July 2018, after making minor amendments to the allegations, the court found the allegations true and set disposition hearings.[6]

III. *Disposition*

The disposition reports, filed in August 2018, recommended the children be declared dependents of the court. The Department observed the family was "making efforts to mitigate the previously identified concerns. That being said, it is the Department's assessment that additional time and services are needed before the children can safe[l]y be returned to the

---

[6] The court's minutes suggest there was a separate jurisdiction hearing for K.N. and that his mother, Melissa N., was present. The reporter's transcript contains the jurisdiction hearing for the children of Dawn N. and J.D., but there is no transcript of the hearing for K.N.

family's home given that the parents . . . are still actively using as of the date of this report." In drug tests conducted at the end of July or early August 2018, the parents tested positive for amphetamine and methamphetamine.

At the disposition hearing, the court declared Logan D., Phillip D. and Jeffrey D. dependents of the court and ordered their parents to participate in reunification services.

The disposition report for K.N. stated—for the first time—that the ICWA did not apply. It explained, "The child's maternal grandparents have indicated that there is no known Native American ancestry. As to the paternal family, limited conversations with the child's biological mother; Melissa [N.], have indicated that she is unaware of any Native American ancestry as it relates to the alleged father."

At the disposition hearing in August 2018, Dawn N. testified that her daughter, who was homeless, asked her to raise K.N., and Melissa N. spent most of her time at a casino. Dawn N. testified someone found K.N. "in a camp" and brought him to his grandparents.

The court found Dawn N. and J.D. were the presumed parents of K.N., whom the court declared a dependent. Although the Department sought to bypass reunification services for Melissa N., the court declined to do because she was not present to waive her right to services. However, the court denied reunification services for K.N.'s alleged father. In January 2019, Melissa N. waived reunification services.

IV.  *Status Review Hearings*

In the status review reports filed in February 2019, the Department recommended the parents of Logan D., Phillip D. and Jeffrey D. continue to receive services. The Department was encouraged by the parents' "ongoing progress in their services and their almost five months of sobriety."

6

Visitation expanded from supervised to unsupervised weekend visits. In the case of K.N., the Department recommended the presumed parents continue to receive reunification services, but that Melissa N.'s services be terminated.

At the hearing in March 2019, the court found the parents were making adequate progress, it continued reunification services, and it set a 12-month permanency hearing. In addition, the court found the presumed parents of K.N. were making adequate progress.

Melissa N. was not present. Her attorney indicated she had not come to see him "since she signed a waiver of services." The court found she made no progress in addressing the problems requiring placement of her child and terminated her reunification services as to K.N.

In the 12-month status review reports for Logan D., Phillip D., and Jeffrey D., the Department indicated the parents "had obtained 7 months in sobriety but in May 2019 they relapsed." Visitation was returned to supervised "due to the parent relapse on methamphetamines." However, the parents "appear to be working hard to reestablish their sobriety and to re-engage in their services." The parents committed to a "Relapse Prevention Plan." "Based on the documented success of the past, the Department continue[d] to believe that the children have a substantial probability of returning home to their parents given an additional six month[s]."

At the review hearing in July 2019, K.N.'s mother, Melissa N., was present. Her attorney identified her as "mother and de facto parent," but the court corrected him, pointing out the grandmother, Dawn N., was the presumed parent. The Department requested a continuance, which was granted, but Melissa N. was not present at the continued hearing later in July 2019. At this continued hearing, the court found the parents continued to make progress and set the matter for an 18-month permanency hearing.

In the 18-month status review reports filed in January 2020, the Department recommended termination of reunification services and setting a section 366.26 hearing (.26 hearing) to select and implement a permanent plan for the children. The reports explained that "since mid-September [2019], behaviors have regressed. The . . . parents . . . have been inconsistent in their random drug testing." "The . . . father had yet to [be] accepted into the Suboxone group and the . . . parents . . . were buying Suboxone under the table because they . . . ran out." The parents refused to submit hair follicle tests. The Suboxone coordinator indicated Dawn N. "has only drug tested for the Suboxone program once in the last four months . . . and [J.D.] has not drug tested at all."

The Department expressed concern that Dawn N. was not consistently addressing her mental health needs, and the parents permitted unauthorized visits between K.N. and his biological mother, Melissa N., and unauthorized "video visits" with the alleged father. Regarding contact with the Department, the parents "in the past have been known to take responsibility [for] their actions, but they have recently . . . regressed in this once positive behavior." While the Department did "not doubt this family's love for each other," they appear unable "to consistently manage their children." The Department had "substantial safety worries" about returning the children to the care of Dawn N. and J.D.

Over the course of four days in February 2020, a contested 18-month review hearing occurred. After hearing testimony and argument, the court terminated reunification services and set a .26 hearing.

V.     *Section 388 Petitions and Termination of Parental Rights*

In July 2020, on the day before the scheduled .26 hearing, Dawn N. filed section 388 petitions in the dependency cases of Logan D., Phillip D.,

Jeffrey D., and K.N. seeking to change the orders terminating reunification services. The petitions stated Dawn N. "has engaged in her AOD [alcohol and other drugs], MH [mental health], and Brightheart services." She stated reunification would be in the best interests of each child, and she had a deep bond with her children.

Dawn N. attached a letter from a substance abuse specialist indicating Dawn N. "has been engaged in Substance Use Disorder services" since May 2020, and that she "shows motivation toward her recovery program and is progressing on schedule." The letter identified what Dawn N.'s requirements would include "when COVID-19 restrictions are lifted." Dawn N. subpoenaed two witnesses to appear at the hearing, including the substance abuse specialist.

After hearing arguments regarding the petitions on July 10, 2020, the court denied them without holding an evidentiary hearing and proceeded to the .26 hearing. At the end of the .26 hearing, the court terminated the parental rights of Dawn N. and J.D. and ordered adoption as the permanent plan for Logan D., Phillip D., and Jeffrey D. Similarly, as to K.N., the court terminated the parental rights of the presumed parents, and also the parental rights of Melissa N. and the alleged father, and it made adoption the permanent plan. Dawn N. appeals.

## DISCUSSION

On appeal, Dawn N. makes two arguments, which we now address.

I. *The Denial of the Section 388 Petitions Without an Evidentiary Hearing Was Not Reversible Error*

Dawn N. contends the court erred by denying her request for an evidentiary hearing on her section 388 petitions. We disagree.

9

A.    *Governing Law and Standard of Review*

Under section 388, a parent may petition to change or set aside a prior order "upon grounds of change of circumstance or new evidence." (§ 388, subd. (a)(1).)  The petition "must be liberally construed in favor of its sufficiency." (Cal. Rules of Court, rule 5.570(a).)  The juvenile court shall order a hearing if "it appears that the best interests of the child . . . may be promoted" by the new order.  (§ 388, subd. (d).)  The parent must sufficiently allege a change in circumstances or new evidence and the promotion of the child's best interests.  (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 807–808.)

To be entitled to an evidentiary hearing on the petition, the petitioner need only show " 'probable cause,' " not a probability of prevailing.  (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 432; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414.)  Nevertheless, the petition "may not be conclusory." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)  Specific allegations are required, and "[s]uccessful petitions have included declarations or other attachments which demonstrate the showing the petitioner will make at a hearing." (*Ibid.*)  "The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.)

We review a juvenile court's denial of a section 388 petition without a hearing for abuse of discretion.  (*In re Jamika W.* (1997) 54 Cal.App.4th 1446, 1450–1451.)  "An abuse of discretion occurs when the juvenile court has exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.)

B.    *No Abuse of Discretion in Denying the Section 388 Petitions*

Here, there was no abuse of discretion.  To show changed circumstances, Dawn N. relied on a letter indicating she engaged in "Substance Use Disorder services" for over a month.  Dawn N. began services and was progressing on schedule.  The services included "AOD [alcohol and other drugs], MH [mental health], and Brightheart services."  However, as explained in the 18-month status review reports filed in January 2020, the parents are "part of a . . . AOD program called Brightheart," but "the group is simply an online check in to receive their Suboxone medication.  There is no class or group aspect to this program."

More importantly, given Dawn N.'s long history of substance abuse, the letter attached to her petitions established, at best, short-term changing circumstances, not changed circumstances.  Numerous cases support this conclusion.  (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [no changed circumstances where mother had "a history of drug relapses, [was] in the early stages of recovery, and [was] still addressing a chronic substance abuse problem"]; *In re Marcelo B.*, *supra*, 209 Cal.App.4th at pp. 641–642 [participation in 12-step meetings insufficient evidence of changed circumstances because father relapsed]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [seven months of sobriety after long history of drug use did not demonstrate changed circumstances]; *In re Casey D.* (1999) 70 Cal.App.4th 38, 49 [denial of petition proper where mother's "circumstances were changing, rather than changed"].)

Second, Dawn N. failed to sufficiently allege the resumption of reunification services would be in the best interests of her children and grandchild.  The petitions were devoid of specific information supporting this prong of the prima facie test; instead, Dawn N. simply alleged she had

11

a "deep bond" with her children.  Based on this general statement, and her failure to show changed circumstances, the court acted well within its discretion in denying Dawn N. an evidentiary hearing on her petitions.  (*In re Anthony W.*, *supra*, 87 Cal.App.4th at pp. 251–252.)

II.  *A Limited Remand Is Necessary to Further Inquire Whether K.N. Is an Indian Child*

In the dependency case of K.N., Dawn N. contends there was a failure "to conduct an adequate inquiry under the ICWA."  We agree.

A.  *Governing Law and Standard of Review*

The ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court must follow before removing an Indian child from his or her family.  (25 U.S.C. § 1902; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8.)  Federal regulations implementing the ICWA require state courts to "ask each participant in an . . . involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child."  (25 C.F.R. § 23.107(a) (2021).)

"In 2007, the state Legislature enacted section 224 in accordance with [the] ICWA."  (*In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1466.)  Under this statute, the court and the Department "have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child." (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)  In addition to the Department's "duty to inquire," at their first appearance, "the court shall ask each participant present . . . whether the participant knows or has reason to know that the child is an Indian child."  (§ 224.2, subds. (b), (c); Cal. Rules of Court, rule 5.481(a).)

12

If the court or social worker "has reason to believe that an Indian child is involved . . . but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court . . . [or] social worker . . . shall make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).) When there is "reason to believe" the child is an Indian child, "further inquiry is necessary." (§ 224.2, subd. (e)(2).) It includes "[i]nterviewing the parents . . . and extended family members" to gather specified information, contacting the Bureau of Indian Affairs (BIA), the State Department of Social Services, and "the tribe or tribes . . . that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)–(C); Cal. Rules of Court, rule 5.481(a)(4).)

If, based on this further inquiry, there is "reason to know" the child is an Indian child, then more formal ICWA notice is required. (§§ 224.2, subd. (f), 224.3; Cal. Rules of Court, rule 5.481(b); 25 U.S.C. § 1912(a).) As this statutory scheme makes clear, "[t]he duty to provide notice is narrower than the duty of inquiry." (*In re Austin J.* (2020) 47 Cal.App.5th 870, 884.)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether [the] ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.)

B.      *The Failure to Conduct a Further Inquiry*

At the detention hearing in July 2018, K.N.'s mother was not present, but Dawn N. testified that K.N.'s "grandfather is Yurok." Despite this testimony, about a month later in its disposition report for K.N., the Department stated the ICWA did not apply because K.N.'s "maternal grandparents have indicated that there is no known Native American

13

ancestry. As to the paternal family, limited conversations with the child's biological mother; Melissa [N.] have indicated that she is unaware of any Native American ancestry as it relates to the alleged father." Two years later, at the end of the .26 hearing in July 2020, the court asked: "This case does not involve an Indian child in any of these matters so I'm not finding any ICWA findings, is that correct, there is no ICWA issues? Continuing obligations, I will ask." No party indicated otherwise.

Based on this record, there was a failure to comply with the inquiry obligations under the ICWA and California law. Dawn N.'s testimony at the detention hearing gave rise to a "reason to believe" K.N. was an Indian child, and therefore a duty to conduct a "further inquiry." (§ 224.2, subd. (e).) The Department should have interviewed "the parents . . . and extended family members to gather" specified information, and it should have contacted the BIA, the State Department of Social Services, and the Yurok tribe. (§ 224.2, subd. (e)(2)(A)–(C).) This inquiry never occurred so a limited remand is necessary.[7]

In arguing there was no error, the Department erroneously relies on the "reason to know" standard that triggers the duty to provide notice to an Indian tribe. The duty to provide notice, however, is narrower than the initial duty to inquire, which is triggered if there "is reason to believe that an Indian child is involved in a proceeding." (§ 224.2, subd. (e); *In re Austin J.*, *supra*, 47 Cal.App.5th at p. 884.) Applying the proper standard, we reject the Department's claims.

---

[7] On her ICWA-020 form—filed eight months after the detention hearing—Melissa N. stated she may have Indian ancestry in the "Oneida" tribe. By itself, this form may or may not have been sufficient to require a further inquiry. Given that we are remanding this case, the Department should also attempt to contact this tribe.

The Department contends that Dawn N.'s testimony at the detention hearing was "vague and speculative; and, therefore, did not trigger notice requirements under [the] ICWA." The Department also claims it was not required to " 'cast about' " for information. But here, Dawn N. identified a tribe, and her statement was "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) As a result, there was a "reason to believe" K.N. was an Indian child and a duty to conduct a "further inquiry." (§ 224.2, subd. (e)(2).)

In arguing otherwise, the Department relies on cases that are inapposite. For example, in *In re Hunter W.*, *supra*, 200 Cal.App.4th at page 1468, "the parent could not even identify the tribe." And in *In re Shane G.* (2008) 166 Cal.App.4th 1532, the issue was whether "sufficient ICWA notice was sent to the Comanche tribe." (*Id.* at pp. 1537–1539.) By contrast, here, after Dawn N.'s statement at the detention hearing, there was no attempt at all to contact the identified tribe. (Cf. *In re A.M.* (2020) 47 Cal.App.5th 303, 309–310 [based on statements in mother's ICWA-020 form, department filed ICWA notices and mailed them to BIA].)

Furthermore, we cannot conclude, as the Department suggests, that the failure to conduct a further inquiry was harmless because Brian H. "was *not* K.N.'s biological father." That fact was never established, and it is also not clear that Dawn N. was referring to K.N.'s paternal grandfather when she stated his grandfather was Yurok.

Accordingly, we conditionally reverse the order terminating parental rights as to K.N. so that the court can order the Department to conduct the inquiry required by the ICWA and California law. (*In re Hunter W.*, *supra*,

15

200 Cal.App.4th at p. 1467 ["When it is shown that the court or department . . . failed to make an inquiry, we remand with instructions to ensure compliance with ICWA; however, in doing so, we do not reverse the jurisdictional or dispositional orders where there is not yet a sufficient showing that the child is, in fact, an Indian child."]; *In re N.G.* (2018) 27 Cal.App.5th 474, 486 [conditionally reversing judgment terminating parental rights and remanding for court to comply with inquiry and notice provisions of ICWA and sections 224.2 and 224.3].)

DISPOSITION

The orders terminating parental rights are affirmed in the dependency cases of Logan D., Phillip D., and Jeffrey D.

In K.N.'s case, we conditionally reverse the order terminating parental rights, and we remand with directions to conduct a "further inquiry" regarding K.N.'s possible membership in the Yurok or Oneida tribes as required by Welfare and Institutions Code section 224.2, subdivision (e). If this inquiry does not give rise to reason to know K.N. is an Indian child, then the order terminating parental rights as to K.N. must be reinstated. If this inquiry gives rise to reason to know K.N. is an Indian child, then ICWA notice must be provided as required by Welfare and Institutions Code section 224.3. If, after ICWA notice, the court cannot determine whether K.N. is an Indian child, then the order terminating parental rights as to K.N. must be reinstated. If any tribe or the BIA determines K.N. is an Indian child, the court shall proceed accordingly.

_____
Seligman, J.*

WE CONCUR:


_____
Simons, Acting P. J.


_____
Burns, J.

A160712

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17